Call the case please. Case number 14-0087, Mr. Walker v. Cook County Sheriff's Merit Board. Thank you. Would you approach the bench please and identify yourselves for us? Good morning, Your Honor. Niall Miller on behalf of Defendant Appellee. Cass Casper, first name CASS, last name CASPTR, on behalf of Plaintiff Appellant Mr. Walker. All right. Thank you very much. So we'll start out with 15 minutes aside and the appellant can reserve some time for rebuttal. All right? Thank you. All right. So you may have a seat and the appellant may proceed when you're ready. Good morning, Your Honors. May it please the Court. First of all, I'd like to reserve three minutes for rebuttal. Very well. Your Honors, this matter is, of course, here on administrative review from a termination decision of the Cook County Sheriff's Merit Board. I'm going to have two primary arguments in this case. First of all, the decision is legally erroneous and against the manifest weight of the record. Second of all, that the termination decision lacks just and sufficient cause as required by the Illinois precedents in judicial review reviewing decisions to terminate public employees. Before I get into the meat of those, I'd like to emphasize, and this will go more to the second argument, a few key facts about the plaintiff, Mr. Walker. It was undisputed at the Merit Board and throughout these proceedings that he was a 32-year employee deputy sheriff in the Court Services Department of the Cook County Sheriff's Office. It was also undisputed that in that 32 years, he had not one iota of prior discipline. There was no evidence of even so much as a verbal or written reprimand in that 32-year career. I have a question. In the record, it's not clear. Was that ever taken into consideration when the board made its determination? As far as I can tell, Your Honor, from the face of the Merit Board decision, those factors which were argued before the board closing argument, they don't even make reference in the decision. So as far as we can tell, they were not considered. But wouldn't that have gone maybe to the penalty anyway? Again, Your Honor, it's hard to know because the decision basically is written such that the board determines that there were violations of the cited general orders, and therefore, they order him separate. They don't even address the adamant arguments we made in closing there that the 32 years, the lack of prior discipline, should be given some weight in determining should this be a termination or something less than that. So that's just general background. There was no evidence establishing that this was a severely problematic employee. But let me get into the first primary argument about the decision being legally erroneous and against the manifest weight. In its decision, there's two explicit points that the Merit Board states. First, they state that possession and ingestion of medications, as Mr. Walker claimed to have done, is an abuse, key word there, of a prescribed drug and a violation of the sheriff's drug-free workplace policy. That's right out of the decision. The second point, they state again, prescriptions well over 12 and 17 years old do not constitute valid prescriptions for controlled substances. Those are two findings, and in my opinion, they constitute the bulk of the findings in the Merit Board's decision finding him in violation of the sheriff's drug-free workplace policy. Here is the problem. There has been no law ever cited by the sheriff or by anybody at the Merit Board in circuit court on administrative review up until today that shows that taking a drug out of your own prescription bottle in 2011, even if the prescription bottle is from the year 2000, violates any federal, state, or local law. Well, they do rely on this one statute, but you tell us the statute they do cite is the one that says a prescription can only be re-billed within a certain time frame.  I acknowledge they do make that argument. The problem is that's from the Illinois Controlled Substances Act. That governs the refill date. Yes. It says nothing whatsoever about after the refill date on the prescription bottle if you can still take those remaining pills in the bottle thereafter. Certainly it's true you can't get it refilled after that date, but the Act doesn't say it's illegal, it's unlawful, the prescription is expired after that refill date. So again, that law doesn't do anything to address the particular facts here that Mr. Walker took a pill out of his own prescription bottle and rendered a false positive for, sorry, rendered a positive result for oxazepam, which was established by the sheriff's own expert witness at the Merit Board. How is abuse defined here by the sheriff's board? Your Honor, that's a key question and one of the key points in this appeal is that it's not really defined anywhere in the sheriff's drug-free workplace policy. It just says abuse of prescription drugs is a violation of the policy, but it doesn't go on to give any definition of that at all. Is that something that perhaps is more appropriately expounded upon by a medical practitioner of some sort as opposed to a sheriff? You mean as to whether or not... Well, abuse of a legally prescribed medication or abuse of a medication, do you think that that might be better left to someone who has some kind of medical background to describe what abuse means? Well, Your Honor raises a good point. I mean, it does seem, first of all, strange for the Cook County Sheriff's Merit Board, whose hearing officers are not, to my knowledge, medical practitioners, to be making decisions that such and such action constitutes abuse of a prescription drug. Furthermore, there was no medical expert called to opine in this case that, yes, this is abuse of a prescription drug. There was a certifying scientist called by telephone. He didn't give any opinion on that issue whatsoever, and there was no other witness testimony to that effect. Was there any testimony to the effect that taking a quarter tablet of Ozazepam, if I'm saying it right, is abusive? To the best I can recollect from the record, there was no specific testimony that that definitely constitutes abuse under the sheriff's general order. And more to the point, I mean, it's definitely not defined in the general order anywhere. I would point out in the appendix to that drug-free workplace policy, there are a couple examples listed of what would constitute abuse, but neither of them... Yeah, what were those again? One of them was taking a prescription in excess of the prescribed amount. So on its face that appears to be, you know, take one capsule per day, and if you took two or three a day, that would be in excess. That's apparently how that example would read. The second example from the appendix to the policy was taking it for some reason other than prescribed. But those are the only two, to the best I can remember, explicit examples of abuse listed in that policy. Now certainly, certainly the sheriff could write the policy in such a way as to say, taking a one-quarter tablet out of your own prescription bottle, we consider that to be abuse. Well, it could also write something else like, if you take a prescription from a prescription over a certain age, that that would be considered abuse. You're correct. That would be its prerogative. Is there so, is there, though, Mr. Casper, at some point, is there a concern that perhaps prescriptions that are, in this case, over almost 10 years of age? Approximately 11 years, yeah. Is there a concern that perhaps, or is there a reasonable interpretation of the policy that when you're taking prescriptions of that age, that that is an abuse? There's nothing in the written policy defining that. And furthermore, the fact that there's nothing in the law anywhere, at any level, stating that, I think goes to the fact that this is not something that a person of ordinary intelligence, sensibility, would consider to be abusive in a way that's going to lose your 32-year career. Do we look at the policy to see if the interpretation is reasonable? Well, I think, again, we would need the testimony of a medical practitioner at the merit board to opine that this constitutes abuse of a prescription drug. We don't have that in this record, so I don't know that we have the record evidence to make a determination if this is a reasonable interpretation or not. From the state of this record, we have commissioners at the Cook County Sheriff's Merit Board deciding essentially a quasi-scientific or medical decision that taking an older pill is abusive. Let me ask you this factual question. The last prescription was 2000, I believe, correct? Yes. Right. So it wasn't renewed, but was it refilled?  It was not refilled. There was no evidence that it was ever refilled, which, again, also one of the arguments in the brief was if there was abuse of this prescription going on, abuse in the sense of being used recreationally, what have you, the inference would be that Mr. would not have any of these old pills because they would have been gone through recreational abuse over the last 10-year period. So the fact that it wasn't refilled, but he still had these in his pill bottle, further undercuts the Merit Board's apparent position that this is abuse. Moving on, there is, to the extent that this is going to come up, a credibility finding in the Merit Board's decision against Mr. Walker, and I want to address that square on. I believe that the evidence is overwhelming that that credibility finding is contrary to the record evidence. They basically say, they do say, Walker told the Office of Professional Review that he was taking diazepam. The investigator, Collins, didn't record that in the written summary statement, and they found that to be unlikely. That was their credibility finding. The problem with that finding is, again, it ignored the point we made in closing argument before it, that when Walker was at the OPR interview, he presented multiple, that's the word from the record, prescription bottles, and that investigator Collins inspected two of them. You don't have to take Walker's word for it. Investigator Collins admitted that that's what she did when she was testifying at the Merit Board. The union steward present, James Williams, testified to the same thing as did Walker. So three out of the four people who were present for the OPR interview all stated he had multiple prescription bottles. OPR just didn't review it. Did the policy require, did their own policy require that the initial investigator turn over any possible prescriptions to the next, I forget the person's name. One was Hines and one was Collins, correct? I'm sorry? The investigator was Collins, and then I think the individual who testified at the hearing was Hines, or do I have them flip-flopped? Hines was, I think, then director or assistant director of the drug testing unit. My understanding from the testimony was that the policy had changed, and that at the time of this OPR interview in May 2011, the OPR investigators, again, non-medical personnel, would be, were to take down the prescriptions that an individual who tested positive on a test was taking, and then would transmit those prescriptions to the director's office of the drug testing unit to be thereon submitted to the drug laboratory. That is laid out in the testimony of Peggy Ann Hines, the director, as well as Collins, and I believe Justin Pham, the expert, may have touched on that as well. That had been a recent policy change from the way the practice had historically been conducted prior to May 2011, but that was the procedure that was testified to. So based on that, if, you know, if Collins wrote in the summary OPR statement that only lorazepam was presented, and we have her admitting later, as well as two other people testifying that four bottles were presented, well, it seems to me that there's, the evidence is really that OPR violated its own drug testing procedure, didn't take down all the prescriptions, and as a result of that, we have this credibility finding that the merit board makes, which, as I've already indicated, doesn't seem to be warranted by the record evidence. So in summary, we'd ask that this court find that that credibility finding be against the manifest weight of the evidence, and then if you combine that with the arguments I've already indicated about the vagueness of the term abuse in this policy, we believe that the decision is legally erroneous and should be overturned. With that, you know, the administrative review case law is also very clear that there's a second part of the analysis here, and that second part, the court need not afford as much deference to the agency's finding of cause for discharge, and I come back to where I started. This is not a five-year employee with a slew of discipline. This is a Vietnam veteran with 32 years at the sheriff's office and no prior discipline. The Kreiser, Massingale, Kirsch, the Stick v. Illinois Merit Commission cases all cited in the plaintiff's brief all acknowledge that there needs to be some nexus between the alleged misconduct that occurs off-duty and the workplace. Not only do we not have any explanation from the merit board about why termination was appropriate, we don't have any explanation as to what the nexus was under these specific facts of this case. We don't have any evidence that Walker was deficient in his performance of his duties, that this undermined morale or the discipline or efficiency of the service. There's nothing in the decision addressing those standards at all. I'm sorry, but is there a general policy perhaps, though, within the workplace everywhere now that there's kind of like this zero-tolerance notion and that for any violation of a policy, a drug policy, that termination is certainly an option? That is generally true. I mean, I think universally true. I think you're correct about that. However, there is the Garrido v. Cook County Sheriff's Merit Board case where I believe it was this body that stated even a constitutional due process, the Garrido case, that is from this district. So based on that, I don't think that the fact zero-tolerance should have any impact on this case as a whole in light of all these other factors we've just discussed, particularly the vagueness of the term abuse, which again is the key here. All right, Mr. Kasper, we'll hear from you again in a few minutes. Thank you. Before you conclude, I just want to ask you something before you don't respond to in rebuttal. How do you address their one point that they've established other violations under the other prongs? How would you say that that should be countered? Well, I would counter that by saying had Investigator Collins at the OPR stage investigated all four of the multiple prescription bottles at that point in time and passed them on to the certifying scientist and Peggy Ann Hines, they would have been able to establish that there were no other violations. Thank you. May it please the Court, Counsel. Your Honor, this case is about plaintiff's violation of the Sheriff's zero-tolerance policy. As a paramilitary organization and a law enforcement agency, the Sheriff has the right to have and enforce a zero-tolerance drug policy and a drug-free work environment. The Sheriff cannot have his sworn officers impaired in any way and must ensure the fitness for duty of his officers. Is there any evidence that he was impaired? Yes, Your Honor. He tested positive for oxazepam, which is a Schedule IV control substance. Was there any evidence that he was impaired? If there wasn't their testimony that he was not impaired? In terms of how he appeared, I believe the witnesses who testified, they weren't qualified to testify about whether somebody is impaired or not. So on what basis do you contend that he was impaired? Just the fact that it was present in his test? Your Honor, the manifest way of the evidence shows that he had control substance in his system that was not prescribed. Now the key piece of evidence... He had a prescription bottle, didn't he? Your Honor, actually the key piece of evidence here is that the investigator testified that when she asked him what caused the positive result, he told her, I took a portion of lorazepam the night before the drug test to sleep. The investigator also testified that he didn't mention any drugs, and in fact the only bottle that he presented to her for her inspection was lorazepam. Well, doesn't the record indicate that he had five bottles, but Shoney looked at two out of the five? Actually, according to the testimony of his own union representative, it was two to five bottles. And nevertheless, the testimony of the Investigator Collins, who was considered credible versus the plaintiff, she testified that the only bottle that was presented to her for her review was lorazepam. Another key piece of evidence in this case is the signed statement from the interview. The signed statement states that Mr. Walker, at the interview, he told the investigator that he took a portion of lorazepam the night before the drug test. The statement does not mention diazepam, it doesn't mention any other drugs. And this interview is... Well, going back, the evidence in the case is that lorazepam cannot cause a positive result for oxazepam, which is what he tested positive for. And this interview is a deliberative process. In this case, it took two days, and the interview itself was one hour. Mr. Walker brought his union representative of his choice, he talked to the investigator for an hour, the investigator typed up the statement, and Mr. Walker and his union representative... So this is the investigator that threatened to arrest him? No, this was Cheryl Collins. And actually, the only testimony about Mr. Humphreys, the only testimony about Mr. Humphreys, was Mr. Walker's own self-serving testimony. And in fact, he brought his... Didn't the union steward say that also? The union steward actually said that he interrupted the investigator. And so the union steward was there to do his job, which was to support Mr. Walker. Going back to the statement, Mr. Walker and his union representative came back the next day. He and his union representative reviewed the statement, initialed each page, signed it, but the statement says nothing about diazepam. Another key piece of evidence is plaintiff's own union steward. The union steward, James Williams, testified that the investigator asked the plaintiff, what drugs did you take? On two separate occasions, the union representative testified at the hearing that he heard plaintiff say, I took a portion of lorazepam the night before the drug test. This is the union representative's own testimony. And in fact, the union representative never testified that he heard diazepam being talked about. He never testified that the statement was wrong. Ms. Miller, would you agree that the testimony relating to what abuse means under the policy could be summarized by Ms. Collins' testimony that she guessed that a 1995 and 2000 prescription were not valid, and then Ms. Hines, who testified that the way she was able to conclude that there was an abuse was by her own viewing of her prescriptions that were limited to a certain date as far as when they could be refilled. Would you say that was the sum and substance of the testimony regarding what abuse means under the policy? Actually, the evidence regarding the, you're talking about the abuse of prescribed drugs. Yes. Which I will talk about later. If you look at the drug policy itself, it is very clear what abuse of prescription drug is. And I would implore the court to actually look at the record, which starts on page 64. That's the actual drug policy itself. Yes. And if the court actually reviews it, it's actually 24 pages long, and it's far from vague. The policy specifically on page 66 says that it prohibits prescription use in excess of prescribed limits. Counsel is claiming that it says prescribed dosage. No, it says prescribed limits. Okay. So what were the prescribed limits? The prescribed limits, he took his diazepam that was prescribed 17 years ago. Is there anything on the bottle that says don't take this after a certain date? Actually, he never, the record shows actually that he didn't bring a bottle. He actually brought some kind of packaging that came with his prescription. Whose burden is it to prove that it was beyond his prescribed limits? He needed to show that he had prescription for whatever caused the problem. Well, don't you have to show that it was beyond the prescribed limits? Well, actually, Your Honor. You want to say it's an abuse? Your Honor, actually, under the Department of Financial and Professional Regulations rule, it's 68 Illinois Administrative Code 1330.730B, that rule actually says that prescriptions expire after one year. And so he admitted to taking an expired drug, which is in excess of prescribed limits. Well, actually, that regulation is directed to pharmacists only, is it not? Pharmacists cannot legally prescribe, or fill rather, fill a prescription beyond the date of issue, beyond a year. Actually, Your Honor, I think Your Honor may be thinking of the Illinois Controlled Substance Act, which states that after six months a prescription cannot be filled. This is a separate regulation. It's under the Department of Financial and Professional Regulations. So it's part of the sheriff's policy? It's actually a regulation that's adopted by this department. It says that prescriptions expire after one year. And what's the site for that? It's 68 Illinois Administrative Code 1330.730B. Okay, and where did you cite that in your brief? Your Honor, actually, in preparation for oral argument, I did additional research and found this. But you haven't actually filed a motion to cite additional authority to do what you're doing today? Your Honor, again, in preparation for oral argument, I did just find this, and I shared this with counsel yesterday. Okay, but it's really sort of a surprise to us. You know, we're actually entitled to know, too. So I would suggest, perhaps, that you file a motion. However, you can continue. What does the regulation direct itself to? Who is it directed to? I believe that it's a regulation directed towards pharmacists in terms of how to set the expiration dates. Your Honor, going back to the manifest read of the evidence, this was not the plaintiff's first time testing positive for controlled substances. He tested positive for controlled substances two other times in his 32 years of service. Right, and he brought in prescriptions, and no complaint was ever issued. Yes, and so I would suggest a heightened standard for him to know that he needs to explain why he got a positive result should apply. According to the testimony of James Williams, every time he tried to explain, Investigator Humphreys would cut him off and on several occasions threatened to arrest him, stating that because his prescriptions were outdated, he could be arrested for possession of a controlled substance. Your Honor, the So the import of those statements are that during this interview, he wasn't given much of an opportunity to explain himself. Your Honor, this interview You're talking about firing a man who's worked for the sheriff for 32 years, who's a Vietnam War veteran, who suffered injury as a result of that service, and you want to fire him because he wasn't able to say, Diazepam, as opposed to, what's the other one?  Lorazepam. And because while he's sitting in an interview being screamed at by a sheriff's investigator and threatened to arrest, because he couldn't say Diazepam as opposed to Lorazepam, you're going to fire him after 32 years. Your Honor, he came back the next day. He and his union representative reviewed the statement. The statement says nothing about Lorazepam. Not only that he was given three additional I'm sorry. Go ahead. You go ahead. You finish. Your Honor, your All right. I do remember that at the hearing, I thought he came in and said he did have a new prescription for Lorazepam, and he also testified that he was unable to get another prescription for Ozazepam because the doctor that he was seeing now was no longer prescribing that but had changed to a different medication. Your Honor, just going back to Justice Palmer's statement, he was given three additional, over three months, to provide proof of prescription, but he didn't do that. He claimed, and this actually addresses Justice McBride's question. His testimony is extremely confusing, and not only that, it hurts his credibility regarding this fact. He admits that he knew that the investigation was open. He claims that he went back to the investigator after the interview, and he said that Diazepam no longer exists, and it's no longer available, which does not make sense because Diazepam is a generic brand of Valium. May I ask you something else? Because I'm thinking now about this regulation that you're going to be relying on, or at least you brought it up. Under the general rules of administrative review, the board, nor yourself, cannot come up with something new and say that this supports the board's finding. Do you understand that? Like, you can't pull a regulation out of a book now and say that this supports what the board did. The board has a limited evidentiary world, universe, and that must come from what was presented at the hearing. Yes, Your Honor, and actually I wanted to point out that Peggy Hines actually testified that after one year, prescriptions expire. Yes, she did, but she said, the way she said it was, I figured that out by looking at my own prescription bottles. Now, neither party has cited any cases interpreting abuse of prescription medication, but do you think that this might perhaps be an area of expert opinion? In other words, shouldn't a physician or nurse or pharmacologist or someone with medical background of some kind have testified regarding what abuse of a prescription medication is? Your Honor, I would disagree with that. The drug policy is very clear. It prohibits use of prescriptions beyond, that exceeds prescribed limits, and also prohibits. Does it say anywhere that it can't be used after one year? It says exceeding prescribed limits, and I would submit that using a drug. That's not an answer to my question. My question is, when the sheriff's employee picks up this policy, which is how many pages long? 24 pages. 24 pages long, and he reads it, and he reads it every day before he goes to work. Does it tell him anywhere in there that he can't take a pill that's more than a year old? It does not specifically state that. Thank you. Your Honor, thank you. Counsel, I have a question. You stated earlier that the term abuse is clearly stated in the policy. Yet on page 15 of your brief you state, here although the term abuse or drug abuse is not defined in the policy, there are commonly used and understood words. So now you're telling us that actually in the policy it is clear, but in your brief you argue that it wasn't. What I meant in the brief, Your Honor, is that there is no actual definition section that defines abuse specifically. But it does explain that you can't. By reading the policy, Your Honor, the policy says you can't use a drug exceeding the prescribed limit. It also says you can't have multiple bottles of controlled substance that are prescribed by a physician. And in this case, Mr. Walker admits that he had possession of five bottles of diazepam and lorazepam, and the evidence shows that these were prescribed by at least three doctors. He testified that he switched back and forth between. Where is this language? I'm sorry. I don't think I've seen it in the briefs about you reference some part in it where it says it gives us some more information about within prescribed limits or something. Where is that coming from? The prescribed limits, it says on page 66 under paragraph B2 of the record. Yeah, but where is that in the sheriff's policy? That is the sheriff's policy, yes, Your Honor. I know, but did you mention that in your brief or anywhere? The fact that it says in excess of prescribed limits? Yes, Your Honor. All right, where is that in your brief? Actually, Your Honor, if you look at page 2 of my brief, I say in the top part, that the policy does not specify the use of controlled substance, which is the limits of medically-adapted prescription, except where it says use of non-medical substance, or abuse of use of prescribed medical substance. I'm sorry.  Yes, Your Honor. Opening brief? Yes, Your Honor. No, okay, page 2. Let's see here. Okay, so where is it now? After the quote. Yes. Yes. It does not include drugs used pursuant to a valid prescription or when used disauthorized. And then where's the other part? Okay. Your Honor, I think that is the only description of the abuse of prescribed limits in the brief. Where? On page 2. Okay, but page 2 says it says that the policy doesn't include drugs used pursuant to a valid prescription. Except when it's an excess. Or, no, it doesn't say that. Or when used as otherwise authorized. And then it says it doesn't apply to the use, okay, within the limits. Is this what you mean? The policy does not apply to the use of controlled substances within the limits of a medically valid prescription. Yes. Okay, but then I thought you had some other, you were referring to something else in the policy. And I was trying to figure out where that is. I was also mentioning that the policy prohibits having multiple prescriptions for controlled substances. Okay. Now, is that in the policy? That is in the policy. It's on page 68 of the record. Okay. Now, would you read that to me again? I just want to know what it says. You can't have multiple prescriptions. Multiple prescriptions for controlled substance from one or more physicians. From one or more physicians? From one or more physicians. You cannot what? Possess? Multiple? You can't have multiple prescriptions. It's on page 68. All right. Now, did you, again, I really have to ask you this. Is this referenced in the brief? I don't believe that specific provision was, Your Honor. Okay. Because, you know, counsel has to respond to your arguments, and we have to be able to address your arguments and ask you about them, but that's not anywhere in your brief, that there's a provision that says you can't have multiple, you cannot have multiple prescriptions for prescribed substances or controlled substances? Correct. Correct. All right. And the board never relied upon that provision in any way, did it? The board, I don't believe the board referenced it. Did any witness? Did any witness that testified before the board? Did Ms. Collins or Ms. Hines or anyone say that it was a violation of the policy to possess multiple prescriptions? I don't think anyone actually testified to that, Your Honor. All right. Because we cannot, you know, we're reviewing the board's decision based on the record and based upon its findings, and there was never a finding that he violated this aspect of the policy, was there? There was no express finding. However, the case law is clear that if the record supports, you know, affirming of the case below, then it doesn't matter what the reasoning was of the trier of fact. And, Your Honor, I actually wanted to go back to the issues with credibility of plaintiff's testimony. What's important to note here is that plaintiff didn't conduct discovery about what the sheriff's expert would actually say. So he didn't know that the sheriff's expert would say at the hearing that lorazepam cannot cause a positive result for oxazepam. On the last day of trial, before plaintiff actually testifies, he hears the expert say, one, lorazepam doesn't cause a positive result for oxazepam, and two, diazepam can. And so after being educated by the expert, he changes his story at the last minute. And you'll see this happening on page 535, line 21 of the record. The plaintiff realizing that this is a feasible story that he can state. So 16 months after the drug test, at the last day of trial, right after hearing the expert testify, he says, for the first time, I took diazepam before the drug test. And what's interesting about his testimony is that it's identical to the other pieces of evidence. The statement, the investigator, and the union representative all say that he said he took a portion of lorazepam the night before the trial for the drug test to help him sleep. Now, the only difference. Didn't he also indicate that when he talked to Collins, that he also had a bottle for diazepam? That's what he testified to, yes, Your Honor. And I was going to say, the interesting thing is the only thing that's different between his testimony and everyone else's testimony is that the drugs are switched out. The union representative heard him say lorazepam. Ms. Collins heard him say lorazepam. The statement says lorazepam. Only Mr. Walker's testimony says that he took diazepam. But it's clear that the record shows that actually, prior to this time, Mr. Walker had always taken the drug test as required, and he had previously tested positive for a controlled substance, and that on two occasions, those substances, I believe, indicated both lorazepam and diazepam, so that it wasn't any surprise that Mr. Walker actually had previously had a valid prescription for lorazepam. What's interesting, Your Honor, what's interesting is that in 1995, when he did test positive, he tested positive for benzodiazepine, which a lorazepam can cause a positive result. So I believe in this case, he thought he could just say he tested positive for oxazepam because he took lorazepam. He didn't realize that until he heard the sheriff's expert testify that lorazepam actually can't cause a positive result for oxazepam, but diazepam can. Didn't the board acknowledge that at the hearing itself, he had an outdated, what they called an outdated prescription for oxazepam, and he also had a current prescription for lorazepam? The board actually said that he had outdated prescriptions for lorazepam and diazepam, but actually after he took the drug test, he got more lorazepam. So he had a current prescription for lorazepam, and he actually gave an explanation for why he didn't have a current prescription for oxazepam. He claimed that diazepam didn't exist anymore. I'm sorry, I'm calling it oxazepam. I may be mistaken. But it's commonly referred to as diazepam? It's basically a generic brand of Valium. Your Honor, so the merit board made a credibility assessment. The merit board found that the plaintiff actually told the investigator, I took lorazepam before the drug test. The merit board found that he didn't actually tell the investigator he took diazepam, and the reasonable inference from this is that it's because he didn't actually take diazepam before the drug test. Otherwise, he would have told the investigator he took diazepam. And actually, Your Honor, counsel may argue this, and I think the plaintiff actually inferred this during his testimony. I think he said something like, it may have been my mistake. It may have been my mistake. But Your Honor, it's not probable that he forgot to tell the investigator that he took diazepam. This was a two-day, oh, excuse me. Go ahead. Wasn't the investigator required to take all of those prescriptions from him and forward them to the deputy or the director, Ms. Hines? Wasn't that the policy? Didn't Ms. Hines say that when we receive a drug test that's positive, the investigator then conducts an interview. She's supposed to forward those prescriptions to us. Then we forward all of them to the lab. Yes, Your Honor. So the investigator asked Mr. Walker what caused a positive result, and he presented for her review. The only drug that he presented for her review was lorazepam. Isn't that though in direct conflict to the testimony of the union representative who testified that he had five prescription bottles with him? He's to present. The union representative actually said that he said two to five. And Mr. Walker actually said that he had three bottles of lorazepam. And so there's actually no evidence that he actually brought diazepam to the meeting except for his own self-serving testimony. And so, Your Honor, going to the abuse of prescription drugs, it is well established that constitutional questions should be avoided if a case can be affirmed on other grounds. And in this case, because the manifest weight of the evidence shows that Mr. Walker had controlled substance in a system that wasn't prescribed, it wasn't lorazepam, it couldn't have been lorazepam, and it wasn't diazepam. Because the evidence shows that he didn't actually take diazepam before the drug test. Because of that, the constitutional question can be avoided. Furthermore, the mirror board's interpretation and application of its own rules should be given substantial deference and should be presumed valid. Going to the argument that there was no cause for discharge,  is sufficient for discharge. And actually, none of the cases that plaintiff cites do involve a positive drug test. But the Supreme Court stated in Lanius that it is only completely related cases involving the same incident that are relevant to determine cause. And in this case, if you compare plaintiff's cases with the sheriff's cases, the sheriff's cases all involve positive drug tests. And in fact, in Solobong, the court affirmed the discharge of a 16-year veteran of the Chicago Police Department for having a positive result for cocaine metabolite. Therefore, in this case, plaintiff violated the sheriff's zero-tolerance drug policy and the Illinois Controlled Substance Act by having controlled substance in his system without any prescriptions and also abusing prescription drugs. As I mentioned before, as a paramilitary organization and a law enforcement agency, the sheriff has the right to have and enforce a zero-tolerance drug policy. The sheriff does not have to condone illegal drug use or prescription abuse. Therefore, we ask this court to affirm the Mayor's Board decision. Thank you. Thank you, Your Honors. Briefly, counsel did provide me with a copy of the regulations under the Illinois Pharmacy Practice Act yesterday. The section referred to was 1330.730. First of all, Your Honor McBride, plaintiff reads that statute similarly to how you suggested that it applies to pharmacists, pharmacist technicians, and to some extent pharmaceutical companies and is not in any way applicable to end-users or patients who have been dispensed prescription drugs the day after the fact. So it's inapplicable on that basis. But if you actually read the section cited, 1330.730, it refers to prepackaged drugs, which is specifically defined at subsection A as drugs being removed from the original manufacturer container, placed in a dispensing container for other than immediate dispensing to a patient. That's the key language there, for other than immediate dispensing. And then subsection B states that drugs falling within that prepackaged definition shall be the manufacturers beyond use date shall be 12 months or the manufacturers beyond use date. So our position here is that the diazepam, all the evidence of the prescriptions in this case, are not prepackaged within the meaning of that subsection. So the act is also inapplicable on that basis. Just one other point briefly. Judge Palmer, I think you've hit the OPR scene as plaintiff tried to articulate it at the Merit Board over objections by the hearing officer. This is not someone who's been at OPR a lot in his career, in his 32-year career. There was no evidence that he was regularly down there, experienced with the process. He did have Investigator Humphreys telling him repeatedly, interrupting him, that he was going to be arrested for possession of controlled substances because they were old. I would note in the record, hearing officer Hogan, I believe over objections, sustained the sheriff's objection to us further getting involved in that portion of the evidence. We were prevented from fleshing that out further by the hearing officer's decisions. Again, Mr. Walker was not well experienced with OPR. If he said the word lorazepam versus diazepam, I mean he's a security specialist, a deputy sheriff in the court services department. He's not a medical expert. There was no evidence he has any medical background or training. So the fact that he may have articulated something imperfectly under some duress at OPR should not be a basis to end his career. Thank you. All right. Thank you very much. The court wishes to express our thanks to both sides for their briefing and for their arguments today. We will take the matter under advisement. Thank you very much.